**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| DAVID KREMELBERG, | § | |
| **Plaintiff,** | § | |
| vs. | § | **Civil Action No. 3:15-CV-3695-K-BH** |
| | § | |
| CORPORAL WESLEY KEELING, et al., | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge** |

<u>**FINDINGS, CONCLUSIONS AND RECOMMENDATION**</u>

Pursuant to *Special Order No. 3-251*, this *pro se* case has been automatically referred for pretrial management, including the determination of non-dispositive motions and the issuance of findings, conclusions, and recommendations on dispositive motions.  Before the Court are *Defendant Ellis County, Texas' Rule 12(b)(6) Motion to Dismiss Plaintiff's Second Amended Complaint*, filed June 7, 2016 (doc. 25), and *Defendant's Second Motion & Brief to Dismiss*, filed June 15, 2016 (doc. 28).  Based on the relevant filings and applicable law, the motions should be **GRANTED**.

**I.  BACKGROUND**

On November 17, 2015, David Kremelberg (Plaintiff) filed suit against several defendants based on a traffic stop that occurred on December 26, 2014.  (doc. 3 at 1.)[1]  His second amended complaint asserts claims under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights against Corporal Wesley Keeling (Corporal) of the Midlothian Police Department (MPD) in his individual and official capacity, the City of Midlothian, Texas (City), and Ellis County, Texas (County) (collectively Defendants).  (doc. 17 at 1-3, 8-13.) He seeks $100,000 in compensatory and punitive damages, a permanent injunction against the City and County, and attorneys' fees and costs. (*Id.* at 14-16.)

Plaintiff contends that Corporal initiated a traffic stop on his vehicle on December 26, 2014,

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

for failure to maintain a traffic lane and failure to stop at a posted stop sign.  (*Id.* at 3.)  Corporal asked Plaintiff a series of questions, including his destination and why his vehicle displayed South Dakota license plates.  (*Id.* at 4.)  He then asked Plaintiff to step out of the car for a sobriety check, and conducted a patdown search for weapons.  (*Id.*)  Before conducting the patdown, "[Corporal allegedly] ordered Plaintiff to interlock his fingers behind his head, and proceeded to grasp Plaintiff's interlocked fingers with his free hand while conducting a pat down search."  (*Id.*)  Plaintiff further contends that "[d]uring the course of the pat down search, Plaintiff twice informed [Corporal] that he suffered from a joint condition, and asked [him] to use less force while physically restraining him."  (*Id.*)  Corporal did not alter his patdown method.  (*See id.*)  Plaintiff contends that he sustained injuries from "[Corporal's] continued tight grasp on his hands, while having been placed in an awkward, hyper-extended position, ultimately exerting extreme pressure on his joints," and that he "has experienced ongoing, intense, and frequent pain in his joints as a direct result of the actions by [Corporal], and has also suffered, and continues to suffer from severe emotional distress as a direct result of this incident."  (*Id.* at 4-5.)

During the search, Corporal located an undisclosed can of pepper spray in Plaintiff's pocket. (*Id.* at 5.)

Corporal issued Plaintiff a written warning for the traffic violations, but informed Plaintiff that he suspected criminal activity.  (*Id.* at 6.)  Plaintiff denied Corporal's request to search his car.  (*Id.*) Corporal then informed Plaintiff that he was going to direct a K-9 unit around Plaintiff's car to detect if drugs were present.  (*Id.*)  According to Plaintiff, "[t]he K-9 unit indicated narcotics near the driver's side door handle."  (*Id.* at 6-7.)  Corporal then proceeded to search Plaintiff's car while Plaintiff stood near Officer Bret Clifton.  (*Id.* at 7.)  "During the course of Corporal Keeling's search, he located a hand-made map of a route from Oaxaca, Mexico to Dallas-Fort Worth, Texas, annotated with times

near various cities along the way; information about different hotels; several computer hard drives; and the trunk carpet that appeared worn from lifting up and down." (*Id.*) Corporal informed Plaintiff that in his "experience as a law enforcement officer," the items found in Plaintiff's car were indicative of smuggling activities and told Plaintiff that he suspected that he was engaged in some form of criminal activity. (*Id.*) Corporal's search revealed no illegal substances, and Plaintiff was permitted to leave. (*See id.* at 7-8.) The entire incident lasted approximately 56 minutes. (*See* doc. 29.)

After the incident, Plaintiff filed a complaint with the MPD. (doc 17 at 8.)

Dashboard camera video and audio files from both Officer Keeling and Officer Clifton's vehicles were provided to Plaintiff by Sergeant Nick Harp's office as part of the investigation and/or public records requests initiated by the Plaintiff. Plaintiff's voice is clearly audible on the *video obtained from Defendant Officer Keeling's vehicle*, twice informing Defendant Keeling of his joint condition, and to utilize less pressure on his fingers.

(*Id.*) (emphasis added). The internal investigation exonerated Corporal and found Plaintiff's claims unfounded. (*Id.*)

On June 7, 2016, the County filed a motion to dismiss. (docs. 25, 26.) Plaintiff did not respond. On June 15, 2016, Corporal and the City filed a joint motion to dismiss. (doc. 28.) Plaintiff responded on July 5, 2016, and Corporal and the City replied on July 19, 2016. (docs. 32, 34.) The motions are now ripe for recommendation.

## II.  RULE 12(b)(6)

Defendants move to dismiss this case pursuant to Rule 12(b)(6). (docs. 25, 28.)

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). "Pleadings" for purposes of a Rule 12(b)(6) motion include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d

191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

Likewise, documents "attache[d] to a motion to dismiss are considered part of the pleadings if they

are referred to in the plaintiff's complaint and are central to [his or her] claim[s]." *Collins*, 224 F.3d

at 499 (quotations omitted); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725

(5th Cir. 2003).  It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of

matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v.

Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

      Here, the City and Corporal rely in part on a video recording of Plaintiff's traffic stop from

Corporal's vehicle that was provided with their motion to dismiss.  Because the video recording was

referred to in Plaintiff's complaint and is central to his claims, none of the defendants rely on any

matters outside of the pleadings in support of their motions to dismiss.  *See, e.g., King v. Fox Entm't

Grp., Inc.*, No. 4:08-CV-688-Y, 2009 WL 4573720, at *1 & n.2 (N.D. Tex. May 4, 2009) (considering

a video recording in determining a motion to dismiss because it was referred to in the plaintiff's

complaint and central to her claims);  *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 776 n.6 (N.D.

Tex. 2007) (same); *cf. Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)

(noting "approvingly . . . that various other circuits have specifically allowed that documents that a

defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to

in the plaintiff's complaint and are central to her claim").  Conversion of the City and Corporal's

motion to dismiss into a motion for summary judgment is therefore unnecessary.  *See Collins*, 224

F.3d at 499; *Katrina Canal Breaches Litig.*, 495 F.3d at 205.

      Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid

dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those

well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d

at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is *plausible on its face*." *Id.* at 570 (emphasis added).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

### III. CORPORAL'S MOTION TO DISMISS

Corporal argues that Plaintiff has failed to state a § 1983 claim upon which relief can be granted against him because he is protected by qualified immunity, and that Plaintiff failed to allege facts related to a constitutional violation or a violation of clearly established law. (doc. 28 at 21-23.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

## A.   Qualified Immunity

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a

right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.[2] *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009) (noting "*Saucier's* rigid 'order of battle'. . . is now advisory"). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Corporal argues that Plaintiff's complaint fails to plead sufficient facts to overcome his qualified immunity defense. (*See* doc. 28 at 21-23.) When qualified immunity is invoked, the plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). To satisfy that burden on a motion to dismiss, the plaintiff must allege facts showing that a defendant violated his constitutional rights and that the violation was objectively unreasonable. *Club Retro, LLC*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). It is well-settled that the burden does not shift to the plaintiff to demonstrate the inapplicability of the qualified immunity defense *until* the defendant has asserted it, however. *See Club Retro, L.L.C.*, 568 F.3d at 194.

The Supreme Court has clearly held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998). The Fifth Circuit has held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12." *Schultea v. Wood*, 47 F.3d 1427,

---

[2] Because current law applies to the first prong but "the law at the time of the incident" applies to the second prong, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

1430 (5th Cir. 1995) (en banc); *accord Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam). This district has found that "after *Schultea*, it appears . . . that a Rule 12(b)(6) motion to dismiss on the ground of qualified immunity is no longer viable." *Johnson v. Anderson*, No. 4:03-cv-1355-Y, 2004 WL 1908212, at *1 n.1 (N.D. Tex. Aug. 2004) (citing *Schultea*, 47 F.3d at 1430); *accord McKay v. Dallas Indep. Sch. Dist.*, No. 3:06-CV-2325-L, 2007 WL 2668007, at *9 (N.D. Tex. Sept. 6, 2007) ("Courts in this district have denied without prejudice motions to dismiss on qualified immunity grounds when the motion is filed before the defendant has answered and actually raised the defense."); *Pena v. Dallas Cty., Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *4 (N.D. Tex. June 26, 2013) ("In the Court's view, however, a defendant in the Fifth Circuit must assert qualified immunity in an answer, not a motion."); *see, e.g., Roberts v. Kirkpatrick*, No. 3:14-CV-812-N, 2016 WL 625055, at *3-4 (N.D. Tex. Jan. 25, 2006), *adopted by* 2016 WL 614020 (N.D. Tex. Feb. 16, 2016) (denying motion to dismiss on grounds of qualified immunity because the plaintiff was not required to anticipate a qualified immunity defense by providing greater specificity in his initial pleading).

Because Corporal raised his qualified immunity defense in a motion to dismiss, the motion should be denied on this basis without prejudice. *See Pena*, 2013 WL 11299229, at *4 (denying a 12(b)(6) motion to dismiss on grounds of qualified immunity "without prejudice to refiling at the proper time") (citing *Giardina v. Lawrence*, 354 F. App'x 914, 915 (5th Cir. 2009)).

## B.   Constitutional Violations

Corporal also moves to dismiss on grounds that Plaintiff has not sufficiently asserted a violation of his Fourth Amendment rights based on his search of Plaintiff's vehicle.[3]   (doc. 28 at 22.)

---

[3]   Even if a defendant's motion to dismiss on grounds of qualified immunity is denied, "[t]his does not mean, of course, that a defendant may not move under Rule 12(b)(6) to dismiss for failure to state a claim based on the plaintiff's failure to plead a violation of his federal constitutional or statutory rights—even though that ground may also be a component of the affirmative defense of qualified immunity." *Johnson*, 2004 WL 1908212, at 1 n.1.

### 1.     *Search and Seizure*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Generally, a search or seizure without probable cause or a warrant is a violation of the Fourth Amendment.  *See Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."); *see also United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011).  Detaining a vehicle and its occupants constitutes a "seizure" within the meaning of the Fourth and Fourteenth Amendments, "even though the purpose of the stop is limited and the resulting detention quite brief."  *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).

To analyze the legality of a traffic stop, the Fifth Circuit applies the two-part test set out in *Terry v. Ohio*, 392 U.S. 1 (1968).  *See United States v. Pack*, 612 F.3d 341, 349-50 (5th Cir. 2010).  First, courts determine whether the initial traffic stop was justified.  *Id.* at 350.  Upon finding that the stop was justified, courts then determine whether the officer's subsequent actions were reasonably related in scope to the circumstances that caused him to initiate the stop.  *Id.*

Here, Plaintiff alleges that he was stopped for multiple traffic violations, i.e., failure to maintain a traffic lane and failure to stop at a posted stop sign on the exit ramp.  (doc. 17 at 3.) Corporal then asked him step out of the car "to conduct a sobriety check," and he conducted a patdown search of him for weapons, which revealed an undisclosed can of pepper spray.  (*Id.* at 3-5.)  Plaintiff alleges that "[Corporal] returned Plaintiff's vehicle registration and license, issued Plaintiff a written warning for the traffic violations, and informed Plaintiff that he suspected Plaintiff of criminal activity."  (*Id.* at 6.)  After Plaintiff refused to consent to a search of his car, "[Corporal] then informed Plaintiff that he was going to direct a K-9 unit around his vehicle to detect if narcotics contraband was present in the vehicle, and did so."  (*Id.*)  Plaintiff alleges that "[t]he K-9 unit indicated narcotics near

the driver's side door handle," before Corporal searched his vehicle.  (*Id.* at 6-7.)

Plaintiff's challenge appears to only relate to the use of a K-9 unit and subsequent search of his vehicle *after* Corporal "issue[d] him a warning for several observed traffic infractions."  (*See* doc. 17 at 6-7) ("From this point in the detention, and moving forward, [Corporal] had no probable cause to conduct a search of Plaintiff's vehicle. As such, [Corporal] no longer had any legal basis to detain the Plaintiff.").  The Fifth Circuit has expressly held that "[a] dog 'sniff' is not a search," however. *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993) (citing *United States v. Hernandez*, 976 F.2d 929 (5th Cir. 1992); *United States v. Gonzalez–Basulto*, 898 F.2d 1011, 1013 (5th Cir. 1990); *United States v. Place*, 462 U.S. 696 (1983)).  Because Plaintiff alleges that "[t]he K-9 unit indicated narcotics near the driver's side door handle," the Corporal's search of Plaintiff's car was reasonable. *See Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (noting "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment").

Plaintiff also seems to argue that using the K-9 unit unreasonably prolonged the traffic stop after he was given a warning on the traffic violation.  (doc. 17 at 7.)  In *United States v. Brigham*, 382 F.3d 500 (5th Cir. 2004) (en banc ), the Fifth Circuit explained "[t]here is . . . no constitutional stopwatch on traffic stops."  *Id.* at 511.  "Instead, the relevant question in assessing whether a detention extends beyond a reasonable duration is 'whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly.'"  *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985) (citations omitted)).  "[T]he most important factor [for courts to consider] is whether the police detained [the individuals] to pursue a method of investigation that was likely to confirm or dispel their suspicions quickly, and with a minimum of interference" *Id.* (quoting *United States v. Hardy*, 855 F.2d 753, 759 (11th Cir. 1988)).

The video recording of the traffic stop referenced in the complaint shows that Corporal utilized different methods to confirm or dispel his suspicions before using the K-9 unit on Plaintiff's car, and that Plaintiff's answers to earlier questions caused his suspicion.  (doc. 29.)  The video also shows that the K-9 search took approximately four minutes, and that the K-9 unit's indication of narcotics prompted the search of the Plaintiff's car.  (docs. 17 at 6-7; 29.)  Because the video shows that Corporal did not delay the stop longer than reasonable, Plaintiff has not sufficiently alleged a constitutional violation under the Fourth Amendment.

### 2.    *Excessive Force*

Plaintiff's allegation that Corporal used excessive force when he conducted his patdown of Plaintiff also implicates the Fourth Amendment.

To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Goodman v. Harris Cty.*, 571 F.3d 388, 397 (5th Cir. 2009); *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).  A violation under the Fourth Amendment is dependant on whether the alleged use of force was objectively unreasonable under the circumstances.  *Graham v. Connor*, 490 U.S. 386, 395 (1989) ("An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts.  *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007).  To gauge the objective reasonableness of the force used, courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399

(5th Cir. 2004)).  Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.  The reasonableness inquiry must consider "the fact that police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that [was] necessary in a particular situation."  *Id*. at 397.

Plaintiff argues that Corporal violated the Fourth Amendment in that he did not utilize "an alternative method of conducting a pat down search given his joint condition."[4]  (docs. 17 at 10; 32 at 6.)[5]  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use *some degree* of physical coercion or threat thereof to effect it."  *Graham*, 490 U.S. at 396 (citing *Terry*, 392 U.S. at 22-27).  "In analyzing unreasonableness, the question is not whether a viable alternative [was] available, but if officers were unreasonable when they did not acknowledge or pursue it."  *Williams v. Kaufman Cty.*, 86 F. Supp. 2d 586, 595 (N.D. Tex. 2000) (noting that a strip search to locate possible weapons "could have been accomplished through a viable alternative—a pat-down") (citing *United States v. Sanders*, 924 F.2d 200, 204 (5th Cir. 1993)).

Here, Plaintiff argues that "Defendants assert in their motion that the Plaintiff showed no apparent signs of stress or discomfort, an assertion this Court is bound to consider favorably to

---

[4] Plaintiff does not appear to argue that Corporal Keeling violated the Fourth Amendment in asking Plaintiff to step out of the car or conducting a patdown.  (*See* docs. 17, 32.)  He only appears to challenge the method.  (*See* doc. 17.)

[5] In response to Corporal's motion to dismiss, Plaintiff argues that Corporal should have used his handcuffs on Plaintiff instead of holding his hands during the patdown because "[h]andcuffs do not affect the joints."  (doc. 32 at 6.)

Plaintiff for purposes of evaluating the Motion to Dismiss." (doc. 32 at 6.) Although a court must accept Plaintiff's well-pleaded facts as true and view them in the light most favorable to him, *Baker*, 75 F.3d at 196, a court cannot "accept as true conclusory allegations or unwarranted deductions of fact," *Collins*, 224 F.3d at 498.

The video recording, which is considered part of the pleadings, includes the entire traffic stop. (*See* doc. 29.) It shows that after Plaintiff was directed to step out of the car, Corporal asked Plaintiff to put his hands behind is head. (*See id.*) He then told Plaintiff, "I am just going to grab your fingers, okay?" (*Id.*) In response, Plaintiff said "Yeah." (*Id.*) Corporal placed his hand on Plaintiff's interlaced fingers without Plaintiff showing any apparent discomfort, pain, or distress, or informing Corporal of any problems. (*See id.*) Plaintiff told Corporal only that he has a "joint condition," but he did not indicate that Corporal's actions were exacerbating that condition or causing him any pain. (*See id.*) Additionally, the entire patdown lasted less than a minute with the bulk of the time related to the location of pepper spray in Plaintiff's pocket, after he expressly told Corporal that he did not have any weapons on him. (*See id.*)

Although Plaintiff alleges that an alternative form of patdown was available, he has not alleged that Corporal's action were unreasonable in failing to use the alternate method under the facts. The complaint therefore does not sufficiently state a constitutional violation under the Fourth Amendment. Corporal's motion to dismiss should be granted.[6]

## IV. THE CITY'S MOTION TO DISMISS

A municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). It is well-settled that a municipality cannot be liable under a theory of *respondeat*

---

[6] Because dismissal has been recommended for failure to allege a constitutional violation, it is unnecessary to consider whether Plaintiff sufficiently alleged a violation of clearly established law.

*superior*, however.[7]  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases).

"Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005); *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010).

## A.    Policymaker

The City argues that Plaintiff "makes no mention of any involvement of any identified City policymakers . . . . In short, Plaintiff tries to use respondeat superior to create liability for the City." (doc. 28 at 19.)

The Fifth Circuit recently clarified in *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016), that "for purposes of Rule 12(b)(6), . . . a plaintiff is *not required* to single out the specific policymaker in his complaint." *Id.* at 282 (emphasis added).

> [T]to survive a motion to dismiss, [the plaintiff] needed only to plead facts—facts which establish that the challenged policy was *promulgated or ratified by the city's policymaker*. [His] complaint did not need to supply an answer to the legal question of the specific identity of the city's policymaker under the relevant statutory scheme.

*Id.* at 285 (emphasis added).[8]  The case involved a claim against the City of Dallas for a "crackdown policy" of arresting vendors without probable cause "in retaliation for annoying-but-protected speech"

---

[7] *Respondeat superior* [Law Latin "let the superior make answer"] is "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency." *Respondeat Superior*, BLACK'S LAW DICTIONARY (10th ed. 2014).

[8] The identity of the policymaker official is a question of state law and not of fact. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988). "Sometimes, a court can make this determination by consulting state statutes. . . . [or] courts may need to consult 'local ordinances and regulations.' " *Groden*, 826 F.3d at 284 n.5 (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008) (per curiam) (consulting the Texas Government Code to determine the policymaker for Texas cities); *Jett*, 7 F.3d at 1245 (consulting the Texas Educational Code to determine the policymaker for Texas school districts); *Praprotnik*, 485 U.S. at 125).

in Dealey Plaza. *Id.* at 286.  Because the plaintiff alleged that the city's official spokesman publically

announced the new policy of cracking down on vendors in Dealey Plaza and gave media interviews

describing the new policy, the Fifth Circuit found that the plaintiff had sufficiently pleaded

promulgation or ratification by a policymaker even though he had not specifically identified one.  *See*

*id.* at 286.

> Here Plaintiff alleges:
>
> In the present case, the City or County's formal and informal actions in failing to recognize, covering-up and/or tacitly encouraging unconstitutional and unlawful actions by police , reflect a policy & procedure, custom and practice, of authorizing and allowing the use of excessive force and unreasonable search and seizure that violated the civil rights of Dr. David Kremelberg. Consequently, the City is liable for harm caused to others, such as Plaintiff, as a result of its policies and procedures, and customs and practices.

(doc. 17 at 11-12.)  He relies on Corporal's actions during the traffic stop, and makes general

conclusory statements about both the City and County.  (*See id.*)  In his response, Plaintiff argues that

he cannot determine the policymaker for the City prior to discovery and points to the fact that both

Corporal and Officer Clifton were wearing MPD uniforms during his traffic stop.  (doc. 32 at 8.)

Even accepting Plaintiff's well-pleaded facts as true and viewing them in the light most

favorable to him, Plaintiff fails to identify any policymaker or point to any actions by the City to ratify

or promulgate any policy.  (*See* doc. 17.)  As noted, even though Plaintiff's complaint need not

"supply an answer to the legal question of the specific identity of the city's policymaker under the

relevant statutory scheme," which he can determine in discovery, he needs to plead some "facts which

establish that the challenged policy was promulgated or ratified by the city's policymaker," whoever

they are. *Groden*, 826 F.3d 285.  Plaintiff's mere conclusory statements are devoid of any facts which

establish any involvement by the City or its policymakers.  (*See* doc. 17.)    Because Plaintiff has

alleged no facts that any policymaker promulgated or ratified an unconstitutional policy or from which

a reasonable inference can be made that it promulgated or ratified an unconstitutional policy, he fails to allege sufficient facts to "raise [his] right to relief above the speculative level." *See Twombly*, 550 U.S. at 555.

**B.      Official Policy or Custom**

The City also contends that "Plaintiff asserts no specific facts to show that any City policy or custom whatsoever was involved in or caused a violation of civil rights."  (doc. 28 at 20.)

"Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).  Where a policy is facially constitutional, a plaintiff must demonstrate that it was promulgated with deliberate indifference to known or obvious consequences that constitutional violations would result.  *Piotrowski*, 237 F.3d at 579-80 & n.22; *accord Peterson v. City of Fort Worth*, 588 F.3d 838, 849-50 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). "Deliberate indifference of this sort is a stringent test, and 'a showing of simple or even heightened negligence will not suffice' to prove municipal culpability."  *Piotrowski*, 237 F.3d at 579 (citation omitted) (stressing that "*Monell* plaintiffs [need] to establish both the causal link ('moving force') and the City's degree of culpability ('deliberate indifference' to federally protected rights)").

"The description of a policy or custom and its relationship to the underlying constitutional

16

violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79.   "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).  In *Spiller*, the Fifth Circuit found the allegation that "[an officer] was acting in compliance with the municipality's customs, practices or procedures" insufficient to plead municipal liability. *Spiller*, 130 F.3d at 167.  It also found that an assertion that several policies "led to" unspecified "unconstitutional arrests and confinements," and that a departmental policy of "engag[ing] in conduct toward African American citizens without regard to probable cause to arrest" were too vague and conclusory to support alleged municipal liability under *Monell*.  *Id.*

In addition, a single incident is insufficient to infer an official policy or custom.  *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753-54 (5th Cir. 2009); *Pineda*, 291 F.3d at 329; *Piotrowski*, 237 F.3d at 581; *see also Hester v. Dallas Cty. Jail*, No. 3:11–CV–3099–B–BH, 2012 WL 1430539, at *3 (N.D. Tex. Mar. 6, 2012) ("His single alleged incident is insufficient to infer that Dallas County has an official customary policy or custom of failing to protect inmates at the county jail."), *adopted by* 2012 WL 1437747 (N.D. Tex. Apr. 25, 2012).

Here, Plaintiffs' complaint alleges that:

County and the City of Midlothian are also liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers. The City or County had a general policy, pattern and/or practice of not properly training police officers in conducting pat down searches and/or employing K-9 units, thereby sanctioning the police officers' actions, which amounted to a departmental policy of overlooking constitutional violations. The City or County's failure to supervise and train its police officers, and the City or County's willful blindness towards the constitutional violations of its employees, constitute gross negligence and/or deliberate and conscious indifference to people's

rights including the right to be free from unreasonable search and seizure.

(doc. 17 at 10-11.)  The complaint does not identify a policy statement, ordinance, regulation, or decision that was officially adopted and promulgated by the City's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.  (*See id*.)  It generally  describes Plaintiff's belief and makes sweeping conclusory statements, but only identifies a single incident of an alleged constitutional violation.  Additionally, Plaintiff argues in his response that "Both officers appeared well-trained and professional during the encounter.  It is probable that they were both following an established policy during the detention, although Plaintiff requires discovery to prove this assertion."  (doc. 32 at 8-9.)  Like *Spiller*, however, mere assertions than "[an officer] was acting in compliance with the municipality's customs, practices or procedures" is insufficient to plead municipal liability.  *See Spiller*, 130 F.3d at 167.

Because Plaintiff relies on a single incident and vague generalities and conclusions, he has not sufficiently alleged an official policy or custom, a necessary element to municipal liability under *Monell*, and therefore he failed to nudge their claim across the line from conceivable to plausible.  *See Twombly*, 550 U.S. at 555.  Accordingly, the City's motion to dismiss should be granted.[9]

## V. THE COUNTY'S MOTION TO DISMISS

The County moves to dismiss Plaintiff's claims on that grounds that Plaintiff fails to allege facts which state an actionable claim against it.  (doc. 26 at 2-4.)  As noted, a municipality may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights.  *Monell*, 436 U.S. at 690-91.  "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker;

---

[9] Because dismissal of Plaintiff's claims against the City and Corporal has been recommended, it is unnecessary to consider the City's additional arguments regarding punitive damages or the statutory basis for Plaintiff's requested permanent injunction.

an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694); *see also Cox*, 430 F.3d at 748; *Valle*, 613 F.3d at 541-42.

Here, Plaintiff makes not allegations regarding the County or any of its employees. (*See* doc. 17.) Plaintiff relies solely on the conduct of Corporal, an individual who Plaintiff alleges is employed by the City, not the County. (*Id.* at 3) ("Defendant Corporal Wesley Keeling is employed by the Midlothian Police Department."). To the extent that Plaintiff identifies the County in his complaint, he only includes it with the City in making general and conclusory statements, which are not sufficient to allege municipal liability. (*See id.*) Because Plaintiff relies on a single incident regarding a non-county employee and vague generalities and conclusions, he has not sufficiently alleged any elements of municipal liability under *Monell*. *See Piotrowski*, 237 F.3d at 578 (citing *Monell*, 436 U.S. at 694). Therefore Plaintiff fails to nudge his claim across the line from conceivable to plausible, and the County's motion to dismiss should be granted. *See Twombly*, 550 U.S. at 555.

## VI. OPPORTUNITY TO AMEND

Notwithstanding their failure to plead sufficient facts, the Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. A *pro se* plaintiff may also obtain leave to amend his complaint in response to a recommended dismissal. *See Swanson v. Aegis Commc'ns Grp., Inc.*, No. 3:09-CV-0041-D, 2010 WL 26459, at * 1 (N.D. Tex. Jan. 5, 2010); *Scott*,

2008 WL 398314, at *1.  Nonetheless, a court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, Plaintiff has amended his complaint twice, but he still fails to allege sufficient facts to support a consititutional violation by Corporal or municipal liability against the City and  County. Additionally, a video of the entire traffic stop is part of the pleadings and was considered in ruling on the Defendants' motions to dismiss, and whether a constitutional violation occurred.  Accordingly, he has alleged his best case, and no further opportunity to amend his claims against the defendants is warranted.

## VII. RECOMMENDATION

Defendants' Rule 12(b)(6) motions should be **GRANTED**, and Plaintiff's claims against them should be **DISMISSED WITH PREJUDICE**.[10]

**SO RECOMMENDED** on this 12th day of December, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[10] In its prayer, the County generally requests costs and attorneys' fees.  (*See* doc. 26 at 4.)  In a suit to enforce § 1983, the court may, in its discretion, grant the prevailing party reasonable attorneys' fees and related expenses.  *See* 42 U.S.C. § 1988(b).  While a prevailing plaintiff in a § 1983 action is usually entitled to an award of fees under § 1988, "prevailing defendants cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless."  *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009) (citation omitted).  To the extent that the County seeks attorneys' fees, it may file a  post-judgment request under Federal Rule of Civil Procedure 54(d)(2).

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE